## SAMUEL C. McGEE, Respondent, v. LOUISA Mc-GEE, Appellant.

**Kansas City Court of Appeals, January 22, 1912.**

1. **DIVORCE: Pleading: Jurisdiction.** The filing of an amended petition is an abandonment of the original petition and plaintiff must stand on the amended petition, but where it appears that an allegation of residence, in a divorce suit, necessary to give the court jurisdiction, was properly stated in the original petition but defectively alleged, by inadvertance, in the amended petition, the error is so technical that it will be disregarded.

2. —————: **Indignities.** Where a husband makes proper provisions for his family and does not squander his earnings, but uses sufficient for the support of his family and economizes, with the remainder, the conduct of the wife in seeking to get the county marshal to invade plaintiff's domestic circle and to coerce him to accede to her demands in the way in which he should conduct his business under such circumstances, constitutes an indignity.

Appeal from Jackson Circuit Court.— *Hon. R. B. Middlebrook,* Judge.

AFFIRMED.

*J. H. Bremmerman* and *J. H. Hawthorne* for appellant.

(1) The circuit court acquired no jurisdiction of the cause, because of a defective amended petition. Sec. 2373, R. S. 1909; Ticknor v. Vorhees, 46 Mo. 110; Anderson v. McPike, 86 Mo. 293; Pate v. Pate, 6 Mo. App. 49; Stansberry v. Stansberry, 118 Mo. App. 427. (2) Plaintiff must establish a cause for divorce and that he is the innocent party. Miles v. Miles, 137 Mo. App. 38; Solomon's Proverbs, chapter 31. (3) The marital contract is not to be severed upon slight grounds. Weller v. Weller, 154 Mo. App. 10; Libbe v. Libbe, 138 S. W. Rep. 685; English v. English, 139 S. W. Rep. 618; Rutlege v. Rutlege, 139 S. W. Rep. 1180.

*John C. Nipp* for respondent.

(1) The circuit court acquired and retained jurisdiction to grant plaintiff a decree of divorce. Smith v. Smith, 48 Mo. App. 612; Wood v. Wood, 59 Ark. 441; Luce v. Luce, 15 Wash. 608, 47 Pac. 21; Michael v. Michael, 79 S. W. (Tex.) 74; Dunlop v. Dunlop, 130 S. W. (Tex.) 715; R. S. 1909, section 2373. (2) Plaintiff did establish a cause for divorce and that he is the innocent party. Green v. Green, 22 Mo. App. 497; Clinton v. Clinton, 60 Mo. App. 300; Tripp v. Tripp, 78 Mo. App. 415; Lynch v. Lynch, 87 Mo. App. 36. (3) The marital contract in this instance was not severed upon slight grounds. Tripp v. Tripp, 78 Mo. App. 415; Lynch v. Lynch, 87 Mo. App. 36; Schweikert v. Schweikert, 108 Mo. App. 478; Rose v. Rose, 129 Mo. App. 179; Clark v. Clark, 128 S. W. 218.


BROADDUS, P. J.—Divorce. The record does not show when this suit was begun, but it does show that on September 26, 1910, the plaintiff filed an amended petition. The amended petition alleges a great many indignities he received at the hands of the defendant, and that plaintiff has resided one whole year in the county of Jackson, state of Missouri. In this latter respect the allegation of residence is similar to that in the original petition. The court, after having heard the evidence, found for plaintiff and entered a decree divorcing the parties from which the defendant appealed.

The defendant contends, first, that the allegations of the amended petition were not sufficient to give the court jurisdiction of the cause. The statute requires the plaintiff, in divorce proceedings, to allege and prove that he or she has resided one whole year in the state next before the filing of the petition, therefore, it is insisted that the allegation in the amended petition of residence in the state one year next before its

filing does not comply with the requirements of the statute and did not give the court jurisdiction of the cause. The filing of the amended petition, of course, was an abandonment of the original petition and the plaintiff must stand or fall on his amended petition. The code provides that: "In every petition, answer, . . . the party shall set forth in one entire pleading all matters which, by the rules of pleading, may be set forth in such pleading, and which may be necessary to a proper determination of the action or defense." It is held in such cases the party must be confined to the matters alleged in his final pleading. [Ticknor v. Vorhees, 46 Mo. 110.] But respondent insists that as the original petition contained the necessary allegation, and the proof showed the residence of plaintiff in the state to be the length of time required by the statute, the court did obtain jurisdiction. It is held, however, that the facts necessary to confer jurisdiction over the subject-matter must be both pleaded and proven. [Standsbury v. Stansbury, 118 Mo. App. 427; Carter v. Carter, 88 Mo. App. 302; Collins v. Collins, 53 Mo. App. 470; Johnson v. Johnson, 95 Mo. App. 329.] Formally speaking, the plaintiff's amended petition was defective in the respect mentioned. The defect seemingly was the result of mere inadvertence and ought not to be regarded. Had the original petition omitted to make the necessary allegation, we would have had nothing from which to infer that the omission in the amended petition was an inadvertence—a clerical mishap. But, as it seems to us that the error complained of is so technical that we deem it our duty to disregard it.

The parties were married in 1890, and they separated on March 4, 1910. Ever since their marriage they have lived in Kansas City, Missouri. Of the marriage two children were born. Estella, the elder, was seventeen years of age at the trial, and Clarence was nine years of age at that time.

The evidence was very conflicting and mostly consisted of accusations of plaintiff against defendant and of defendant against plaintiff. It may be conceded that in some respects both were reputable people of good moral character, and both were industrious and frugal, and by their joint efforts had acquired, for persons with their opportunities, considerable property. It developed on the trial that while the defendant was a good housekeeper, she was possessed of such a temperament that she was not disposed to permit the plaintiff to control their household matters and their manner of living, and found fault with his management of their affairs, which frequently brought on quarrels in which defendant would use toward plaintiff abusive and aggravating language. There was evidence that on such occasions she would tell him to get out, that she could get along without him; that at times she would refuse to cook his meals; that on one occasion she told him, in the presence of witnesses, to take his kids and get out "that she could get along without us"; that she bought groceries on plaintiff's credit and sold them to neighbors, and various matters similar were given in evidence; that she called him an "ornary cuss" and used other abusive terms of like nature in the presence of witnesses. On the other hand, reputable witnesses testified that defendant's conversation was free from both profanity and slang, and the trial court in an opinion rendered found that the evidence was so evenly balanced that he found his conclusion in the case without the aid of such testimony. The court, however, found certain facts to have been sufficiently proven or admitted, viz., that she admitted that she went to the marshal's office and complained that her husband was not turning his money over to his family, proposed a compromise and arrangement which would be satisfactory to her, and wished the marshal to carry it out. The proposition was that out of the $100 a month he received, he should

have $20 a month for his personal needs, and turn over the $80, the excess, for the support of his family. It also further appears that she cooked him oatmeal containing worms for his breakfast and boasted about it to a neighbor during the time he was eating it. The tenor of the evidence is that defendant's conduct to plaintiff was greatly aggravating and that she tried to assume control, and when plaintiff offered opposition, she would get angry and endeavor to have her own way. For instance, when the boy was sick and plaintiff sent for a doctor, she refused to have him treat the child because she did not believe he was a good doctor, and would not let the patient take the medicine prescribed. Plaintiff and daughter went and bought a piano; the defendant refused to receive it and sent it back and bought another. The plaintiff wanted sheets to sleep on, even in winter, and furnished the material for the purpose, but defendant refused to make them up, as she thought they were unnecessary and he had to sleep without them. These particular instances are especially mentioned by the court as evidence of the fact that defendant disregarded her duty to the husband as the natural head of the family.

The evidence makes it sufficiently clear that plaintiff did make sufficient provision for his family and that he did not squander any part of his money, but invested it in property or for other useful purposes. Taking into consideration the fact that plaintiff was not squandering his earnings, but was using a sufficient part for the proper support of his family and economizing with the remainder, the conduct of defendant in seeking the interference of the marshal to invade plaintiff's domestic circle and to coerce him to accede to her demands in the way in which he should conduct his business under such circumstances, we think, was such an indignity which any man of stamina and moral worth would resent, and that it would at

the same time afford sufficient justification for a repudiation of his marriage ties. A woman so lost to all sense of duty towards her husband as to act as defendant admitted she did, has little or no conception of the duty of a wife to her husband.

Because defendant was shown to have been a woman and mother of good character, devoted to her household, etc.; that she is a "home-keeper and home-builder" of the highest type, that type of woman as is set forth in the 31st chapter of Solomon's Proverbs, the defendant contends plaintiff was not entitled to the decree. We shall not take up space and quote the proverb, although we believe it is all right, or ought to be, as Solomon, by reason of his experience with many hundred wives should have known, but we will content ourselves with merely calling attention to one sentence that it contains, viz.: "She shall do him good and not evil all the days of her life." If the evidence on admissions of the defendant be true, defendant was sadly deficient in one of the qualities mentioned that constituted a good wife. That she was a good woman in all other respects we deem it our duty to emphasize, but for some reason or other her natural disposition prevented her from being a good wife to plaintiff. The judgment is affirmed. All concur.